UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| **ROBERT MARTIN SCHAUB,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 10-CV-2131 |
| ) | |
| **MARK R. DORAN and STACIE BRUENS,** ) | |
| ) | |
| Defendants. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#59) filed by Defendants, Mark R. Doran and Stacie Bruens. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#59) is GRANTED.

## FACTS[1]

Plaintiff, Robert Martin Schaub, was held at the Ford County jail for a period of time beginning on June 15, 2007.[2] During the time that Plaintiff was held at the Ford County jail,

---

[1] The facts are taken from Defendants' statement of undisputed facts, Plaintiff's statement of additional undisputed facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record. This court has not considered conclusory, unsupported statements included in Plaintiff's Declaration. In responding to a Motion for Summary Judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, it is not sufficient for a plaintiff "to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This court has also not considered numerous documents submitted by Plaintiff which have no relevance to this case. This court additionally notes that Plaintiff has insisted that this court should not consider the Declarations filed by Defendants in this case in support of their Motion for Summary Judgment. Plaintiff has pointed out that the Declarations filed with the court were not signed. In fact, the Declarations contain electronic signatures as required by this court's e-filing procedures and can properly be considered by the court.

[2] The parties have not addressed whether Plaintiff was a convicted person or a pretrial detainee while he was at the Ford County jail. However, the standard for deliberate indifference is the same. Rosario v. Brawn, 670 F.3d 816, 820-21 (7th Cir. 2012).

Defendant Stacie Bruens was the Lieutenant Jail Administrator and Defendant Mark Doran was the acting Sheriff of Ford County.

At the time Plaintiff entered the Ford County jail, he stated that he was taking four medications for his eye and two medications for his back but did not have them with him. Plaintiff's fiancee brought Plaintiff his eye drop medication to treat the condition in his right eye.[3] Plaintiff maintained possession of those eye drops and was able to administer them on an as-needed basis. Plaintiff had seen Dr. Panagakis at Carle Clinic in May and June 2007 for a condition in his right eye and had a follow up appointment scheduled for July 5, 2007. There is no evidence that Plaintiff informed Defendants that he had an appointment scheduled on July 5, 2007. Plaintiff has admitted that he had not had a problem with his right eye from the time he entered the Ford County jail up to December 16, 2007, and his eye condition "may have been in remission from June 15, 2007 to December 16, 2007."[4]

On December 16, 2007, Plaintiff was attacked by another inmate and received cuts near his right eye. As a result, Ford County personnel immediately called an ambulance for him so that he could be evaluated and treated, if necessary. An ambulance arrived at the Ford

---

[3] Plaintiff is blind in his left eye.

[4] At one point in his pro se Declaration (#64), Plaintiff stated that his eye condition was in remission until December 2008. Although Defendants have seized on this as an admission which precludes any recovery in this case, this court concludes that this statement was an obvious typographical error by the pro se Plaintiff. Plaintiff clearly has, however, admitted that he was not having problems with his right eye until December 16, 2007. This court further agrees with Defendants that this is consistent with Plaintiff's Complaint (#1) and Amended Complaint (#38) which alleged that Plaintiff was denied medical care following the December 16, 2007, injury to his right eye. This court has therefore not considered Plaintiff's attempts to complain about the lack of treatment prior to that date. Any such claim was not included in Plaintiff's pro se Complaints, would be untimely, and is contradicted by Plaintiff's admission that he was not having problems with his right eye before December 16, 2007.

County jail and began to take Plaintiff to the emergency room. The weather on December 16, 2007, was particularly bad. It was both extremely cold and a large amount of snow had fallen and was falling. The winds were also extremely strong and, therefore, blew the snow causing many drifts. Travel on the roads was challenging, at best. While en route to the hospital with Plaintiff, the ambulance got stuck in a snow drift and was unable to move. The Ford County Sheriff's office sent a road deputy in a separate vehicle to meet the paramedics at the site where the ambulance was stuck for the purpose of picking Plaintiff up and returning him safely to the Ford County jail. Plaintiff was placed back into custody. According to Plaintiff, he did not receive any treatment for the cuts around his right eye even though the paramedics in the ambulance told him he needed stitches. The records from the ambulance, which were provided by Plaintiff, state that Plaintiff's "bleeding was controlled."

On December 18, 2007, Plaintiff saw the medical care providers at the Ford County jail. The registered nurse informed Bruens that Plaintiff's right eye cuts were healing and no additional treatment was necessary. On January 11, 2008, Plaintiff saw the medical care provider again. They discussed the eye drops Plaintiff was still using. The medical care provider contacted Dr. Panagakis, who Plaintiff said had treated his pre-existing, chronic condition affecting his right eye. At that time, Plaintiff still had the eye drop medications in his cell.

On January 30, 2008, Plaintiff submitted a complaint about his eye medication. On February 4, 2008, Plaintiff submitted a complaint/request form. Plaintiff stated that he was having the same symptoms as the last time he lost his sight and wanted medical treatment.

The registered nurse was scheduled to be at the Ford County jail within the next day or two and Plaintiff was already on the list to see her. On February 6, 2008, Plaintiff submitted a complaint/request form about his eye problem. Plaintiff said that the form was written by another inmate because he could not see to write. Bruens was informed that Plaintiff was specifically complaining about blurry vision similar to symptoms he experienced when he was originally diagnosed with iritis and glaucoma in his right eye prior to his incarceration. At that time, the nurse informed Bruens that Dr. Panagakis wanted to have Plaintiff come see him for a visit. There was concern that Plaintiff had not been using the eye drops regularly based on the fact that he had not run out of them since June 2007.

The nurse contacted Dr. Panagakis's office at Carle Clinic and an appointment was scheduled for February 8, 2008. Arrangements were made to transport Plaintiff to Carle Clinic for treatment with Dr. Panagakis's office to evaluate and treat symptoms associated with his right eye. On February 8, 2008, Plaintiff saw Dr. Lowrey, Dr. Panagakis's colleague, also an eye specialist, about his right eye symptoms. Dr. Lowrey recommended that Plaintiff be transported to see a different specialist at the University of Illinois Medical Center in Chicago. Arrangements were immediately made for the officer that was with Plaintiff at Carle Clinic in Urbana to transport Plaintiff to Chicago to meet with the eye specialist recommended by Dr. Lowrey.

Plaintiff was delivered safely from Carle Clinic in Urbana to visit the recommended eye specialist in Chicago. Plaintiff was treated by Dr. Prit Oat Sinchai from the University of Illinois at Chicago and was then returned to the Ford County jail. Once Plaintiff was back

at the Ford County jail, the jail facilitated securing the medication prescribed for Plaintiff by Dr. Sinchai. From that point forward, the prescription eye drops were administered to Plaintiff like all other medications, and the administration of the eye drops was recorded. The next day, February 9, 2008, officers from Ford County transported Plaintiff to the University of Illinois Medical Center in Chicago for a follow-up visit with Dr. Sinchai.

On February 12, 2008, Plaintiff was again transported to Chicago for a follow-up visit with Dr. Sinchai. At that visit, Dr. Sinchai characterized everything with Plaintiff's right eye as "normal." On February 22, 2008, Plaintiff was transported to Chicago for another follow-up visit. Plaintiff later complained that he was not happy with the medications prescribed. On March 3, 2008, Plaintiff was released to the Illinois Department of Corrections (IDOC).

Plaintiff returned to the Ford County jail on April 9, 2008 for a resentencing hearing. On April 15, 2008, Plaintiff submitted a complaint/request form and stated that he was having a reaction to medication he was taking and needed to see a nurse. On April 17, 2008, Plaintiff was seen by a registered nurse for the purpose of addressing his concerns regarding his medications for his right eye. At that time, an eye drop medication that needed to be refilled was refilled. Plaintiff admitted to the nurse that he had stopped using one of the eye drop medications.

On April 21, 2008, Plaintiff prepared multiple request forms for the purpose of requesting eye care treatment. The nurse called Dr. Lowrey's office to discuss Plaintiff's medications and was told that Dr. Lowrey was out of the office and they would call back. Plaintiff continued to complain about the condition of his right eye. On April 23, 2008, Dr.

Lowrey's office called and told the nurse she should call Dr. Sinchai's office in Chicago. The nurse called Dr. Sinchai's office and left a message. On the morning of April 24, 2008, the nurse called Dr. Sinchai's office again. Dr. Sinchai said it would be a good idea if he saw Plaintiff. Plaintiff was transported to Chicago to address his right eye conditions that day. On April 28, 2008, Plaintiff was again transported to Chicago for a follow-up visit. Plaintiff was returned to the custody of the IDOC two days later, on April 30, 2008.

## PROCEDURAL HISTORY

On December 10, 2009, Plaintiff filed a pro se Complaint (#1) in the Southern District of Illinois against Defendants Doran and Bruens, as well as Adam Pope and Deputy McGuiness. Plaintiff's claim was brought pursuant to 42 U.S.C. § 1983. Plaintiff alleged that he was assaulted by another inmate on December 16, 2007, and was hit in the eye. Plaintiff alleged that he was denied medical attention for his right eye and that Defendants were reckless when they placed the other inmate in his cell. On January 7, 2010, Plaintiff paid the full $350.00 filing fee. On June 23, 2010, the case was transferred to this court.

On December 3, 2010, this court held a merit review hearing. This court determined that Plaintiff could proceed on his claim of deliberate indifference to his serious medical needs against Defendants Doran and Bruens. This court dismissed Plaintiff's claim of failure to protect and dismissed Defendants Pope and McGuiness. A Discovery Order (#37) was entered on May 11, 2011, and the case was set for trial on August 13, 2012. On June 3, 2011, Plaintiff filed a pro se Amended Complaint (#38), without leave of court, against Defendants Doran and Bruens as well as Pope and McGuiness. Plaintiff again alleged that

he was assaulted by another inmate on December 16, 2007, and alleged that he was denied medical treatment for his injuries, which led to him developing iritis and glaucoma. Plaintiff alleged that he was exposed to a known risk when the other inmate was placed in his cell block and also alleged that Defendants Doran and Bruens were deliberately indifferent to his serious medical needs. This court subsequently entered text orders which stated that Plaintiff had admitted at the merit review hearing that Defendants Pope and McGuiness had no forewarning that the other detainee would attack him. This court again terminated Defendants Pope and McGuiness and stated that Plaintiff was not allowed any further amendments to his complaint. In Plaintiff's Expert Witness Disclosures provided to Defendants in June 2011, Plaintiff stated that Dr. Sinchai (misspelled as Dr. Sangia), the eye specialist who provided treatment to Plaintiff for his eye, could testify that the Ford County jail was responsible for the condition of Plaintiff's eye.

   On May 7, 2012, Defendants filed a Motion for Summary Judgment (#59), as well as a Memorandum of Law in Support with attached exhibits (#60). Defendants included the Declaration of Dr. Sinchai. Dr. Sinchai stated in this Declaration that he is a board certified opthalmologist and provided a course of treatment for Plaintiff. Dr. Sinchai stated that he has never indicated, nor does he "hold the opinion that the Ford County Jail, the Ford County Sheriff or any of its employees are responsible in any way for the condition of [Plaintiff's] eye." On June 8, 2012, Plaintiff filed his Response to Motion for Summary Judgment (#63),

Affidavit (#64), Response to Memorandum (#65), and Exhibits (#66).[5] On June 12, 2012, this court entered a text order. This court stated that, in order to give the court ample time to rule on the Motion for Summary Judgment, the final pretrial conference set for 7/25/2012 and the jury trial set for 8/13/2012 were vacated. On June 29, 2012, Defendants filed their Reply to Plaintiff's Response (#70), with attached exhibits.[6] The Motion for Summary Judgment is fully briefed and ready for ruling.

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture."

---

[5] This court allowed Plaintiff's request for an extension of time to file his response.

[6] This court allowed Defendants' request for an extension of time to file their Reply.

Singer, 593 F.3d at 533, quoting Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008).

The party opposing summary judgment "must present definite, competent evidence in rebuttal."  Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).  Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).

## PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  In order to state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  Estelle, 429 U.S. at 106.  Deliberate indifference requires the prison official to act with a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994), quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991).  "They must know of the serious risk to the prisoner's health, i.e., the serious medical need at issue, and they must also consciously disregard the risk/need so as to inflict cruel and unusual punishment upon the prisoner."  Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006), citing Farmer, 511 U.S. at 837-38.

Defendants argue that they are entitled to summary judgment because the evidence

shows that they were not deliberately indifferent to Plaintiff's serious medical needs but in fact provided Plaintiff with appropriate and timely medical care while he was held at the Ford County jail. This court agrees.[7]

This court concludes that the condition of Plaintiff's right eye was a serious medical need, especially considering that he was already blind in his left eye. This court further concludes that Defendants were not deliberately indifferent to this need but in fact transported Plaintiff to see an eye specialist in Chicago on six occasions. This court agrees with Defendants that Plaintiff was treated repeatedly for the medical problems that he claimed to have and that were diagnosed by competent medical personnel. The record supports Defendants' argument that the pattern of access to medical care for Plaintiff in this case is exceptional in nature and was exactly what the medical care providers recommended.

Plaintiff's claim appears to be that he should have received treatment after he received cuts near his right eye on December 16, 2007, and that there were delays in receiving treatment after he complained of problems with his right eye. This court concludes that Defendants were not deliberately indifferent to Plaintiff's serious medical need when he was injured on December 16, 2007. An ambulance was called to take Plaintiff to the hospital for treatment but was unable to get there because of severe weather. Plaintiff has not disputed

---

[7] Defendants have also argued that they were not personally informed of many of Plaintiff's complaints and requests for medical care and therefore cannot be liable under 42 U.S.C. § 1983, which requires personal responsibility. See Backes v. Vill. of Peoria Heights, Ill., 662 F.3d 866, 869 (7th Cir. 2001). Because this court concludes that Plaintiff was provided with appropriate and adequate medical care while he was at the Ford County jail, this court does not need to address this argument. This court also does not need to address Defendants' argument that they are entitled to qualified immunity.

that it was the severe weather which prevented his trip to the hospital. This court agrees with Defendants that, given the weather conditions, the actions of those involved on the part of the Ford County Jail were not unreasonable, much less unconstitutional.

This court also concludes that, although Plaintiff may not have received treatment for the condition of his right eye as soon as he would have liked, he has not shown that any delay in this case arose to a constitutional violation. This court recognizes that a significant delay in effective medical treatment "may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010). However, an "inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (emphasis in original), quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995); see also Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002). In this case, this court concludes that any delay in providing treatment for Plaintiff's eye condition was not significant. Plaintiff's eye condition was successfully treated by a specialist in Chicago shortly after Plaintiff began complaining of problems with his right eye. This court further concludes that Plaintiff has not established the detrimental effect of any delay in treatment. In fact, Dr. Sinchai's Declaration states that he does not "hold the opinion that the Ford County Jail, the Ford County Sheriff or any of its employees are responsible in any way for the condition of [Plaintiff's] eye." Plaintiff indicated during his deposition, taken on November 7, 2011, that he is able to see on a daily basis and that, although his

vision fluctuates, it is sometimes 20/20.

This court notes that Plaintiff has complained extensively that Defendants failed to adequately train the staff at the Ford County jail and that provisions of the Illinois Administrative Code were not followed at the Ford County jail. Plaintiff has argued at length that Defendants should have followed procedures and found out that he had a follow up appointment scheduled with Dr. Panagakis on July 5, 2007. However, Plaintiff's only claim is that Defendants were deliberately indifferent to his serious medical needs. Therefore, allegations of failure to train or failure to follow the Administrative Code are not relevant to Plaintiff's claim or this court's analysis. Plaintiff has also argued that he has shown that Defendants were negligent in treating his serious eye condition. Even if Plaintiff has shown some negligence on the part of Defendants, "[n]either negligence nor even gross negligence is a sufficient basis for liability" for deliberate indifference. See Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Rapier v. Kankakee County, 203 F. Supp. 2d 978, 983 (C.D. Ill. 2002) ("Deliberate indifference is more than negligence and approaches intentional wrongdoing").

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (#59) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's claim.

(2) This case is terminated.

(3) If Plaintiff wishes to appeal the judgment, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave

to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also accumulate a strike under 28 U.S.C. § 1915(g).

        ENTERED this 12th day of October , 2012.


        s/MICHAEL P. McCUSKEY
        U.S. DISTRICT JUDGE